David C. Bohrer, SB# 212397
CONFLUENCE LAW PARTNERS
60 South Market Street, Suite 1400
San Jose, CA 95113-2396
Tel.: 408.938.3882
Fax: 408.971.4332
dbohrer@ConfluenceLaw.com

J. Pat Heptig (*pro hac admission pending*)
HEPTIG LAW GROUP, LTD.
1700 Pacific Ave., Suite 2650
Dallas, TX 75201
Tel.: (214) 451-2154
pheptig@heptiglaw.com

Attorneys for Plaintiff
REAL TIME DATA, LLC d/b/a IXO

**Filed**

MAR 2 0 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

E-filing

EJD

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT CALIFORNIA

CV12 80107 MISC.

| REALTIME DATA, LLC d/b/a IXO., | MISC No.: |
| --- | --- |
| *Plaintiff*, | [Plaintiff Realtime Data files this motion pursuant to subpoenas for deposition and documents served upon third-party Openwave Systems] |
| vs. | |
| METROPCS TEXAS, LLC, *et al.* | **REALTIME DATA LLC'S MOTION TO COMPEL DOCUMENT PRODUCTION AND TESTIMONY FROM OPENWAVE SYSTEMS, INC.** |
| *Defendants*. | |
| | **(Case No. 6:10-cv-00493-LED (E.D. Tex.))** |

# **TABLE OF CONTENTS**

Page

I.  Introduction and Background .................................................................................. 1

II. Argument and Authorities...................................................................................... 3

    A. The Requested Documents and Testimony are Discoverable ........................................3

    B. The Withheld Documents and Testimony Are Not Available From Any Other
Source ....................................................................................................................4

III. Openwave's Objections to the Document Subpoena Should Be Overruled........................5

    A. Openwave's General Objections Should Be Overruled ...........................................5

    B. Openwave's Objections to Realtime's "Definitions and Instructions" Are
Without Merit ......................................................................................................... 8

IV. Openwave's Objections to Specific Document Requests Should Be Overruled................9

    A. Request for Production No. 1 .....................................................................................9

    B. Request for Production No. 2................................................................................... 12

    C. Request for Production No. 3................................................................................... 12

    D. Request for Production No. 4 .................................................................................. 13

    E. Request for Production No. 5 .................................................................................. 14

    F. Request for Production No. 6 .................................................................................. 15

    G. Request for Production No. 7 .................................................................................. 15

    H. Request for Production No. 8 .................................................................................. 16

    I. Request for Production No. 9 ................................................................................... 17

V. Openwave's Objections to the Deposition Subpoena Should Be Overruled................... 17

    A. Openwave's Objections to Realtime's "Definitions" Should Be Overruled ............. 17

    B. Openwave's Objections to the Deposition Topics Should Be Overruled ................. 19

        1. Deposition Topic No. 1........................................................................................ 19

        2. Deposition Topic No. 2........................................................................................ 20

        3. Deposition Topic No. 3........................................................................................ 20

        4. Deposition Topic No. 4........................................................................................ 21

i

5. Deposition Topic No. 5 ..................................................................................... 21

6. Deposition Topic No. 6 ..................................................................................... 22

7. Deposition Topic No. 7 ..................................................................................... 22

VI.   Conclusion ................................................................................................................ 23

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

# TABLE OF AUTHORITIES

## CASES

Page

*Exxon Shipping Co. v. U.S. Dept. of Interior,*
    34 F.3d 774 (9th Cir. 1994) ....................................................................................3

*Gonzales v. Google,*
    234 F.R.D. 674 (N.D. Cal. 2006)...........................................................................4

*Micro Motion, Inc. v. Kane Steel Co., Inc.,*
    894 F.2d 1318 (Fed. Cir. 1990) ..............................................................................5

*Truswal Systems Corp. v.  Huydro-Air Eng'g, Inc.,*
    813 F.2d 1207 (Fed. Cir. 1987) ..............................................................................4

## FEDERAL RULES

Fed.R.Civ.P. 45...................................................................................................................4

Fed.R.Civ.P. 37(a)(5)........................................................................................................23

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Realtime Data, LLC d/b/a IXO ("Realtime") files this Motion to Compel Production of Documents and Testimony from Openwave System, Inc. ("Openwave") and would respectfully show the Court as follows:

## Jurisdiction

This Court has jurisdiction over this Motion to Compel under 28 U.S.C. § 1338(a) because the underlying action arises under the Patent Laws of the United States, Title 35 of the United States Code.

## I.      Introduction and Background

On September 23, 2010, Realtime filed a patent infringement action, styled *Realtime Data, LLC d/b/a IXO vs. MetroPCS Texas, LLC et al.*, Case No. 6:10-cv-00493-LED, in the United States District Court for the Eastern District of Texas, Tyler Division (the "Lawsuit"), for infringement of eight (8) separate U.S. Patents owned by Realtime.[1] The patents-in-suit are directed to systems and methods for data compression and accelerated data storage and retrieval. In the Lawsuit, Realtime asserts that certain wireless communication companies, namely Sprint Nextel Corporation and its affiliates (collectively "Sprint"), AT&T, Verizon, MetroPCS, Cricket, and T-Mobile (the "Defendants"), infringe Realtime's patents by using certain data compression and data acceleration technology in their data communication networks for downlink data communications.

The close of fact discovery in the Lawsuit is fast approaching on June 15, 2012. Heptig Decl., Ex. 2 (Docket Control Order at 3). The Court in the Eastern District of Texas entered a Discovery Order providing that "source code will not be subject to discovery in this case until an appropriate protective order is entered by the Court setting forth specific procedures for source

---

[1] Realtime's current operative pleading is its Second Amended Complaint for Patent Infringement filed on October 18, 2011. *See* Declaration of J. Pat Heptig in Support of Realtime Data's Motion to Compel, Exhibit 1 thereto, filed concurrently herewith (hereafter "Heptig Decl."). During the course of the case, Realtime has narrowed the case by removing two patents and removing certain claims within the 6 remaining asserted patents.

1

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

1    code production to guard against any inappropriate disclosure of source code material, whether

2    intentional or unintentional." On June 6, 2011, the Court entered a Stipulated Protective Order

3    providing extensive and detailed guidelines and procedures for the protection of confidential

4    information and computer source code. *Id.*, Ex. 3 (Stipulated Protective Order at p. 14)

5         In the course of discovery in the Lawsuit, Realtime learned that various data compression

6    products produced by Openwave are or have been utilized in the accused Sprint wireless data

7    network Accordingly, on January 4, 2012, Realtime served a Subpoena Duces Tecum on

8    Openwave requesting the production of documents from Openwave regarding the features and

9    functionality of the Openwave data compression products used by Sprint in the accused data

10   network. Heptig Decl., Ex. 4 (document subpoena). Realtime also delivered to Openwave a

11   copy of the Stipulated Protective Order with the document subpoena. *Id.*

12        After Realtime agreed to an extension of time to respond, Openwave served its objections

13   to Document Subpoena on January 27, 2012. *Id.*, Ex. 5 (Openwave objections). Since that time,

14   Realtime has attempted to respond to Openwave's objections and to resolve any confidentiality

15   issues so that Openwave could and would produce the requested documents. Realtime has had

16   numerous verbal and written communications with Openwave in order to attempt to reach a

17   resolution. Realtime has explained its document requests, refined the issues, and narrowed the

18   scope of its requests in a good faith attempt to reach agreement on these issues. *See* Heptig Decl.,

19   ¶¶ 8-9 and Exhibits 6-9 thereto. But those efforts were not successful, thereby necessitating this

20   motion.

21        To date, Openwave has produced a total of only six (6) documents in response to the

22   subpoena, totaling about 300 pages. However, these few documents are "customer level"

23   documents that provide only high level descriptions of the product functionality. Two of the

24   documents are product "installation" and "administration" documents intended for Openwave

25   customers. One is simply a "white paper" that describes the general functionality of one

26   Openwave data compression product. These few documents do not provide descriptions of all of

27   the Openwave data compression products at issue here. Nor do they provide the level of

28   technical detail necessary to show how the Openwave data compression products actually

2

1   perform the data compression functions, such as how it analyses the data received by the system,

2   what compression algorithms are utilized for each type of input data, how the system chooses the

3   compression parameters for the compression algorithms, how the system adapts those parameters

4   depending upon network and device conditions, etc.. Moreover, the handful of documents do not

5   show the technical operation details of the multiple Openwave data compression products (and

6   sub-versions of those products) utilized by Sprint in the accused data network. Openwave has

7   refused to produce any further documents in response to the subpoena.

8        In addition serving a document subpoena, on March 5, 2012, Realtime served a

9   deposition subpoena upon Openwave, seeking testimony on topics paralleling the topics covered

10  by the document requests in the document subpoena. Heptig Decl., Ex. 10 (the "Deposition

11  Subpoena"). On March 19, 2012, Openwave served its objections to the Deposition Subpoena,

12  which essentially mirror Openwave's objections to the Document Subpoena. *Id.* Ex. 11

13  (Openwave objections to deposition subpoena).

14       As shown below, Openwave's objections to Realtime's document requests and

15  corresponding deposition are not valid. Openwave's objections should be overruled, and this

16  Court should order Openwave to produce all of the requested documents and a witness to testify

17  about the documents and other topics set forth in the Deposition Subpoena.

18  **II.    Argument and Authorities**

19       **A. The Requested Documents and Testimony Are Discoverable**

20       Rule 45 of the Federal Rules of Civil Procedure governs discovery of nonparties by

21  subpoena. The scope of discovery through a subpoena is the same as that applicable to Rules

22  26(b) and 34. *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

23       Rule 26(b) permits discovery of any nonprivileged matter that is "relevant to any party's

24  claim or defense" where "relevant information need not be admissible at the trial if the discovery

25  appears reasonably calculated to lead to the discovery of admissible evidence." Relevancy, for

26  the purposes of discovery, is defined broadly. *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.

27  1993). Further, the Federal Circuit has encouraged courts to err on the side of disclosure. "A

28  district court whose only connection with a case is supervision of discovery ancillary to an action

3

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave
Systems, Inc.

in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt...the court should be permissive." *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.,* 813 F.2d 1207, 1211-12 (Fed. Cir. 1987).

All of the requested documents and witness testimony are relevant to the issues in the Lawsuit. The requested documents deal directly with the various data compression products from Openwave utilized in the accused data network operated by Sprint (and possibly other Defendants in the Lawsuit).[2] These are the very products and services which, when utilized in the Sprint data network for downlink data communications, are alleged to infringe on Realtime's patents. The requested deposition testimony parallels the document requests and is directly relevant to the Openwave data compression product utilized by Sprint in its accused data network. The documents and testimony are, therefore, discoverable and should be produced by Openwave.

### A. The Withheld Documents and Testimony Are Not Available From Any Other Source

Rule 45(c)(3)(B) and (C) of the Federal Rules of Civil Procedure provide the Court may allow discovery of confidential information if there exists "...a substantial need for the testimony or material that cannot be otherwise met without undue hardship..." Disclosure of protectable information is not *per se* unreasonable when appropriate protective measures are imposed. *Gonzales v. Google,* 234 F.R.D. 674, 686 (N.D.Cal. 2006).

A substantial need exists for production of the withheld documents and the deposition testimony. In the scope of discovery in the Lawsuit, Realtime has learned that various data compression products from Openwave are being utilized or have been utilized in the accused data network operated by Sprint. Realtime has requested relevant documents from Sprint (and the other Defendants) in the Lawsuit. Sprint produced documents describing the operations of the Openwave data compression products.[3] The Sprint documents, however, provide only high-

---

[2] Openwave's counsel has represented that Sprint is the only defendant in the Lawsuit that has licensed any Openwave data compression products. *See* Heptig Decl., ¶ 12.

[3] Sprint asserts that it has produced all of its documents in its possession relating to the operation of the Openwave data compression products in the accused Sprint data network. *See* Heptig

4

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

1   level generalizations of only some of the relevant features of the Openwave products. The Sprint

2   documents do not show the technical details of how the Openwave products actually perform the

3   various data compression-related features and functions at issue in the underlying patent

4   infringement action.   As a result, Openwave is the only party that has all of the requested

5   relevant documents and information (*e.g.*, Openwave's product design documents, system

6   functional architecture documents, data flow diagrams, computer source code, operational

7   manuals and procedures).   Therefore, Openwave is the party who is in the best position to

8   produce the necessary documents and testimony with the least burden to all concerned.

9       If Realtime is prevented from obtaining this discovery, it will be prevented from

10   accessing facts necessary to support its infringement claims at trial and the documents will be

11   unavailable as proof at trial. While Realtime understands Openwave's reluctance to produce

12   confidential information, reluctance alone is insufficient to warrant the refusal to produce the

13   requested documents. A protective order is an appropriate protective measure, when the

14   discovery sought is from a third-party to the main litigation. *Micro Motion, Inc. v. Kane Steel*

15   *Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990). The Stipulated Protective Order entered by the

16   Court in the Eastern District of Texas in the underlying action adequately protects Openwave's

17   confidential and proprietary information. Therefore, the documents and testimony requested by

18   Realtime should be produced.

19       Openwave has lodged numerous objections to Realtime's production requests and the

20   deposition topics. As shown below, those objections are without merit and should be overruled.

21   **III.**   **Openwave's Objections to the Document Subpoena Should be Overruled**

22       **A. Openwave's General Objections Should be Overruled**

23       Openwave has set forth numerous "General Objections" to Realtime's document

24   requests, which are addressed below.

25       **General Objection 1**: Openwave objects to the subpoena "to the extent that it seeks

26   documents that are not reasonably calculated to lead to admissible evidence in the [Lawsuit]"

27

28   Decl., ¶ 13.  No other Defendant in the Litigation has identified any use of Openwave data
compression products in their respective accused data networks. *Id.* at ¶14.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave
Systems, Inc.

1   Openwave further asserts that Realtime has refused to provide Openwave with copies of

2   Realtime's infringement contentions.

3   　　　　The objection is without merit. The objection is so global that it is meaningless. No

4   particular document request is identified, nor is any reason specified that any request is not

5   relevant or material.  Openwaves' professed ignorance of the underlying infringement allegations

6   is simply false. Realtime has provided Openwave with ample information regarding the

7   requested discovery and the underlying patent infringement claims in the Lawsuit, including

8   identifying the asserted patents and the asserted claims in each patent, and providing claim

9   construction rulings by the Eastern District of Texas court interpreting the claim terms in the

10  asserted patents. And finally, on April 16th, after Sprint consented to the disclosure of its

11  confidential information, Realtime provided Openwave's counsel with a copy of Realtime's

12  initial infringement contentions from the underlying action as they pertain to the Openwave data

13  compression products in the accused Sprint data network. *See* Heptig Decl., ¶15.

14  　　　　**General Objection 2**: Openwave objects to the subpoena "to the extent that it seeks

15  documents that are publicly available or in the possession, custody or control of defendants in the

16  [Lawsuit] or Realtime."

17  　　　　This objection is also without merit. It is so global and general as to be meaningless. No

18  particular request is identified, and no documents are specified.  Further, merely because a

19  document may be publicly available or in the possession of one of the parties to the Lawsuit does

20  not make it exempt from discovery.

21  　　　　**General Objection 3**: Openwave objects to the subpoena to the extent that it seeks

22  privileged documents.

23  　　　　Under Rule 26 of the Federal Rules of Civil Procedure, this is not an appropriate method

24  by which to withhold alleged privileged material. Openwave has not identified any allegedly

25  privileged documents, much less the basis for withholding any alleged privileged documents.

26  　　　　**General Objection 4**: Openwave objects to the subpoena "to the extent that it purports to

27  impose on Openwave burdens and obligations that exceed those required by the Federal Rules of

28  Civil Procedure . . . ."

6

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave
Systems, Inc.

1   The objection is without merit. It specifies no such rules and no such excess "burdens and

2   obligations" allegedly imposed on Openwave.

3   **General Objection 5**: Openwave objects to the subpoena because the term

4   "Compression Server" is alleged to be vague, ambiguous and unintelligible and calls for a legal

5   conclusion regarding the scope of the claims in the Lawsuit.

6   The objection is without merit and should be overruled. The term "Compression Server"

7   is explicitly defined in paragraph I.4 of Exhibit A to the Document Subpoenas as:

8   "COMPRESSION SERVER includes all hardware and/or software products developed or

9   created by you that provide or are intended to provide data compression, media

10   optimization, image optimization, markup optimization, bandwidth optimization,

11   bandwith shaping, bandwith allocation, transcoding, "transrating", reduction and/or

12   acceleration for data transmissions in a data network, including but not limited to,

13   products and services using all versions of the Openwave "Integra" products, the

14   Openwave "Media Optimizer" products, and the Openwave "Web Optimizer" products,

15   and other similar data compression, optimization, reduction and/or acceleration

16   technologies developed, marketed or sold by you." Heptig Decl., Ex. 4 (subpoena Ex.

17   "A" at p.1)

18   This definition is clear, concise, and easily understood. It even specifically identifies several of

19   the Openwave data compression products at issue here. Namely, the Openwave "Integra,"

20   Openwave "Web Optimizer," and Openwave "Media Optimizer" data compression products. In

21   addition, in correspondence with Openwave's counsel, Realtime further narrowed and specified

22   the Openwave data compression products at issue: "The documents produced by Sprint in the

23   underlying litigation show that at least the following Openwave products are or have been

24   utilized by Sprint to perform data compression and/or data optimization in the Sprint data

25   network: Openwave Integra, Openwave Integra with Value Added Services (VAS), Openwave

26   Media Optimizer, Openwave Web Optimizer, Openwave MAG (including the MAG5, MAG 6,

27   and MAG 6.4 product versions), Openwave 'OpenWeb' and 'OpenWeb' ASP." *See* Heptig

28   Decl., Ex. 7 (February 14, 2012 letter to Openwave counsel). The definition of "Compression

7

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

Server" in the Deposition Subpoena identifies an additional Openwave data compression product, the "MAG" product. *Id.*, Ex. 10 (subpoena exhibit "B" at p. 2). In all events, the definition is clear and easily understood. Openwave's objections are without merit and should be overruled.[4]

**General Objection 6**: Openwave objects to the subpoena "to the extent that it requires disclosure of trade secret, proprietary or other confidential information or competitively sensitive information." Openwave further objects to the subpoena to the extent that it seeks disclosure of information that it is contractually prevented from disclosing.

The objection is without merit and should be overruled. The objection specifies no particular confidential information that has been requested and no third-party contracts that might apply here. Regardless, the Stipulated Protective Order provides confidentiality protections for any such Openwave and third-party confidential information.

**B.** **Openwave's Objections to Realtime's "Definitions and Instructions" Are Without Merit**

Openwave asserts numerous objections to the "definitions and instructions" contained in Realtime's Document Subpoena. Realtime below responds to each in order.

**Objection 1**: Openwave "generally objects" to Realtime's instructions to the extent they purport to exceed the requirements of Rule 45 of the Federal Rules of Civil Procedure. The objection is without merit. It sets forth no instruction(s) to which the objection might apply.

**Objection 2**: Openwave objects to the definition of "Openwave" to the extent it includes persons acting on behalf of Openwave without having authority to do so. The objection should be overruled. If Openwave has knowledge of any such actors, it should be required to produce any responsive documents which relate to such persons.

---

[4] Openwave makes the identical objection to the term "Compression Server" to many of Realtime's discovery requests. Realtime's response to this particular objection is the same for each such objection. To avoid repetition of Realtime's response, Realtime hereby incorporates by reference its response to Openwave's objections to the term "Compression Server" in each instance.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

**Objection 3**: Openwave objects to Realtime's definition of "Communications" as overly broad and "unduly burdensome to the extent that it seeks to encompass transmittals of information that have not been reduced to writing." The definition is not overbroad. It is clear and concise. An example of a "transmittal not reduced to writing" is an electronic communication, which is discoverable and covered by the definition.

**Objection 4**: Openwave objects to Realtime's definition of "refer," "relate," or "concern" because the definition is alleged to be "overly broad and unduly burdensome to the extent that it is broader than the scope of relevant discovery defined in . . . Rule 26(b)." The objection is without merit and should be overruled. The definition is not overly broad. It is clear and concise. Openwave makes no mention of how the definition might exceed the parameters of Rule 26(b).

**Objection 5**: Openwave objects to Realtime's definition of "source code" because it is "overly broad and unduly burdensome to the extent it seeks any files that are not permanently saved or stored by Openwave or that are not reasonably accessible because of undue burden or cost." The objection is without merit. The definition again is clear and concise. Further, if the source code is not saved or stored, it could not be produced in any event. Openwave fails to state that any source code requested is not reasonably accessible or that there is any undue burden or cost involved in accessing any source code. Openwave cannot rely on a mere conclusory statement that there is an undue burden or cost. It must state what that "undue" burden or cost is and provide supporting facts. It has failed to do so here.

**IV.    Openwave's Objections to Specific Document Requests Should be Overruled**

    **A.    Request for Production No. 1:** "Documents sufficient to show the features and functionality of each Compression Server product or service provided to or used by any Defendant."

Openwave objects to this request on many grounds. First, Openwave incorporates all of its General Objections regardless of their applicability to this specific request. Realtime

9

incorporates its responses to those objections set forth above.[5] Openwave then lists other objections to the request, as follows.

1.   Openwave objects that Realtime has received or can obtain the requested documents from Sprint or the other Defendants in the Lawsuit. As discussed above, Sprint has produced the documents in its possession in the underlying action relating to the Openwave products. Those documents do not disclose the technical details of how the Openwave products operate.  Therefore, it is not possible for Realtime to obtain the necessary documents from Sprint or other Defendants in the Lawsuit.  Moreover, Openwave does not and cannot know what documents Realtime may have received from others. And even if it did, that is not a valid reason for Openwave to refuse to produce relevant documents. The documents sought are Openwave's documents. Openwave is the only party who can know all of the documents related to its products. Openwave is the only party that can prove up its own documents and the information disclosed therein.  Even if Sprint produced some of the requested documents (such as operation manuals), Realtime cannot know if all documents relevant to Openwave's products were provided to or produced by Sprint. The only source for all of the requested documents is Openwave.[6]

2.   Openwave next objects that the request is overly broad and unduly burdensome. The request is neither. Openwave has only set forth its conclusions about the requested documents. It has failed to state even one fact or reason to support its conclusions. Regardless, Realtime has attempted in good faith to narrow the requests to reduce any alleged burden on Openwave. *See* Heptig Decl., ¶¶ 8-9, Exs. 6-9 (letters to Openwave providing detail and

---

[5] Openwave incorporates its general objections in response to every production request. Realtime's response to that particular objection is the same for each such objection. To limit the continued repetition of Realtime's response to that objection, Realtime hereby incorporates by reference its responses to Openwave's general objections for each instance.

[6] Openwave makes the same objection to many of Realtime's requests that the requested documents can be obtained from other sources.  Realtime's response to that particular objection is the same for each such objection. To avoid repetition, Realtime hereby incorporates by reference the foregoing response to Openwave's objection that the requested documents can be obtained from other sources for each instance.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

1   narrowing scope of document requests).  Openwave has argued that the request is overbroad
2   because it encompasses the Openwave "Media Optimizer" data compression product – a product
3   which Openwave's counsel claims has not been tested or implemented in the accused Sprint
4   network. Realtime requested some form of evidence to establish Openwave's counsel's claim of
5   "non-use," but none has been provided to date. In contradiction to Openwave's counsel claims,
6   documents produced by Sprint indicate that the Openwave "Media Optimizer" product is or was
7   utilized by Sprint. There is a factual dispute on this issue and Realtime is entitled to discovery to
8   ascertain whether the product has been used by Sprint or not.  If the evidence shows that the
9   product has not been used or tested by Sprint, then Realtime has already agreed that it does not
10  need technical documents for that particular product. Openwave's objection regarding the
11  "Media Optimizer" product does not apply to the other Openwave data compression products
12  used by Sprint, including the Openwave "Integra," "Web Optimizer," "OpenWeb," and "MAG"
13  products. Moreover, documents responsive to Request Nos. 6-9 relating to cost analyses, data
14  traffic reduction analyses, or "return-on-investment" analyses would continue to be relevant and
15  material because such documents may contain information regarding Sprints internal costs
16  structures and Sprint's alleged decision to implement or not implement the Openwave "Media
17  Optimizer" product. Such information is relevant and material to the damages in the underlying
18  litigation and is reasonably calculated to lead to the discovery of admissible evidence.

19       3.  Openwave objects to the request to the extent it seeks Openwave's proprietary
20  and confidential information and/or proprietary and confidential information of other parties that
21  Openwave is contractually bound not to disclose. It is difficult to imagine any patent
22  infringement suit that does not involve the disclosure of confidential information. That is
23  precisely why the District Court in the Eastern District of Texas issued its Stipulated Protective
24  Order in the underlying action. That order adequately protects any Openwave confidential
25  information that will be disclosed.[7]

26  _____
27  [7] Openwave makes the same "confidentiality" objection to many of the document requests.
    Realtime's response to this objection is the same for each such objection. To avoid repetition,
28  Realtime hereby incorporates by reference the foregoing response to Openwave's
    "confidentiality objection in each instance.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave
Systems, Inc.

Notably, Openwave does not assert that requested documents are not relevant or material to the issues in the Lawsuit. Indeed, it is clear that the requested documents are of great relevance and materiality to those issues. *See* Heptig Decl., ¶¶ 8-9, Exs. 7 & 9 (February 14 and April 10, 2012 letters to Openwave counsel detailing relevance and materiality of requested documents). Openwave's objections to this document request should be overruled, and Openwave should be ordered to produce the requested documents at the earliest possible date.

**B.     Request for Production No. 2:** "All installation, operation, administration and/or user manuals for each Compression Server product or service provided to or used by any Defendant."

1.   Openwave objects that the request is overly broad and unduly burdensome. The request is neither. Openwave has only set forth its conclusions about the requested documents. It has failed to state even one fact or reason to support its conclusions. To the extent the objection is premised upon the request for documents relating to the Openwave "Media Optimizer" product, that issue has been discussed above in connection with Request No. 1. *See* Section IV.A.2, *supra*.

Notably, Openwave does not assert that the requested documents are not relevant or material to the issues in the Lawsuit. Indeed, the "installation, operation, administration, and user manuals" for each Openwave data compression product utilized by Sprint in the accused data network is highly relevant. Those documents provide information as to how Sprint is implementing and operating the Openwave products in the accused network.   While this document category has some overlap to Request No. 1, Realtime provided Openwave with a list of customer "user" manuals apparently missing from Sprint's document production. *See* Heptig Decl., Ex. 9 (April 10, 2012 letter at p. 7-8 setting out list of missing user manuals).  Openwave's objections should be overruled, and Openwave should be ordered to produce the requested documents at the earliest possible date.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

**C.    Request for Production No. 3: "**Source Code for each Compression Server product or service provided to or used by any Defendant."

    1.  Openwave objects that the request is overly broad and unduly burdensome. The request is neither. The request is clear and limited to source code for the Openwave data compression products provided to Sprint or any other Defendant in the Lawsuit. During discussions between counsel for the parties, Openwave has asserted that its products incorporate certain "open source" computer software and, therefore, Openwave should not have to produce any source code.  To the contrary, regardless of whether Openwave obtained some software code from an "open source" provider, Openwave had to incorporate any such "open source" code into it's the existing source code for its final product.  How that "open source" code was modified and implemented in the Openwave product is relevant and material to see exactly what alleged "open source" code was utilized and how it was utilized in the overall product software that constitutes the Openwave products. Simply pointing to a third-party "open source" provider does not establish (and is not evidence of) what particular function the software source code performs in the Openwave products in issue here. That can only be determined from Openwave's source code.

    2.  Openwave objects to the request to the extent it seeks Openwave's proprietary and confidential information and/or proprietary and confidential information of other parties that Openwave is contractually bound not to disclose. Again, this is the same objection Openwave asserted against "Request for Production No. 1." For the same reasons set forth above, Openwave's objection based on confidentiality is without merit.  *See* Section IV.A.3 *supra*. Indeed, this objection is even more without foundation with respect to any alleged "open source" code utilized in Openwave's products.  Furthermore, on several occasions, Realtime proffered a "source code production protocol" to Openwave providing additional protections for the review and production of computer source code. But, Openwave's counsel ignored the proposal. *See* Heptig Decl., Exs. 7 & 9 (February 14th and April 10th letters to Openwave counsel attaching draft source code production protocol and requesting comments).

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

Openwave does not assert that the requested source code documents are not relevant or material to the issues in the Lawsuit. Indeed, it is clear that the requested product source code is highly relevant and material to Realtime's patent infringement claims against Sprint. Openwave's objections to the document request should be overruled, and Openwave should be ordered to produce the requested documents at the earliest possible date.

**D.    Request for Production No. 4:** "All Documents sufficient to show the current and historical sales (from 2004 to the present) of each Compression Server product and service provided to or used by any Defendant."

1.   Openwave objects that Realtime has received or can obtain the requested documents from Sprint or other Defendants in the Lawsuit. This is the same objection Openwave asserted with regard to "Request for Production No. 1." For the same reasons set forth above, Openwave's objection is without merit. *See* Section IV.A.1 *supra.* In addition, Realtime agreed to narrow this request to production of sales agreements and contracts between Openwave and Sprint (or any other Defendant) that were not produced in the underlying action. Realtime is still in the process of obtaining production of all of sales agreements and contracts from Sprint in the Lawsuit. To the extent Sprint does not have the agreements or contracts, Openwave should be required to produce them.

2.   Openwave next objects that the request is overly broad and unduly burdensome. The request is neither. Realtime has already agreed to narrow this request to production of sales agreements and contracts that are not produced by Sprint in the underlying Lawsuit. *See* Heptig Decl., Ex. 7 (February 14, 2012 letter to Openwave counsel at p. 3).

Openwave has not objected that the requested documents are not relevant or material to the issues in the Lawsuit. The sales records are relevant to the issue of damages in the underlying action because the amount of money Sprint paid for the Openwave data compression products impacts the costs savings Sprint has achieved from using the Openwave products in the Sprint network. Openwave's objections are without merit and should be overruled. Openwave should be required to produce the requested documents at the earliest possible date, if not otherwise produced by Sprint.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

**E.**     **Request for Production No. 5:** "All Communications between You and any Defendant relating to the operation, design, features, functionality and/or installation of each Compression Server product or service."

Openwave objects that the request is overly broad and unduly burdensome and because it seeks documents that are not reasonably calculated to lead to admissible evidence. The request is neither overly broad nor unduly burdensome. Realtime previously agreed to limit this request to communications with Sprint relating to customizations of the Openwave products for use in the Sprint data network. *See* Heptig Decl., Ex. 7 (February 14th letter to Openwave counsel at p. 3). The requested documents are relevant to the underlying patent infringement claims because the documents will evidence any customizations to the Openwave data compression products for Sprint's data network and the reasons why Sprint wanted such changes. Openwave's objections to this request are without merit and should be overruled.

**F.**     **Request for Production No. 6:** "All Documents relating to the value, benefits or advantages of each Compression Server product and service provided to or used by any Defendant."

Openwave objects that the phrase "value, benefits or advantages" is vague, ambiguous, inherently subjective and not reasonably calculated to lead to the discovery of admissible evidence. The phrase is simple, straightforward English. Openwave certainly describes its products and services to its customers and potential customers as having value, benefits, and advantages. The requested documents are extremely relevant and material to the issues in the Lawsuit, including damages and patent validity. The requested documents contain information about the Openwave data compression products utilized in the accused Sprint network, about the unique and valuable capabilities of those products, and about the advantages and benefits Sprint obtains from using the Openwave products in the Sprint network. All of which could be used as evidence in the Lawsuit or lead to the discovery of such admissible evidence. Openwave's objections to the document request should be overruled, and Openwave should be ordered to produce the requested documents at the earliest possible date.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

**G.   Request for Production No. 7:** "All Documents relating to any return-on-investment (ROI) analysis for any of your Compression Server products or services that you have performed, participated in, or received."

Openwave objects that the request is overly broad and unduly burdensome and that it is not reasonably calculated to lead to the discovery of admissible evidence. The request is neither overly broad nor unduly burdensome. It is clear and precise. The requested documents are extremely relevant and material to the issue of damages in the Lawsuit. The requested documents show the cost savings and financial benefits flowing to Sprint from using the Openwave data compression products in the accused Sprint data network. Indeed, Openwave's company website offers a "ROI" calculator for interested customers to use to get a "ball park" figure for the type and range of cost savings they could achieve from using the Openwave data compression products. *See* Heptig Decl., ¶16, Ex. 12 (webpage from Openwave website regarding "ROI" modeling calculator).  Realtime previously agreed to limit this request to documents regarding any "ROI" analyses relating to Sprint's purchase or use of Openwave data compression products in Sprint's data network. *Id.*, at Ex. 7 at p. 4.  Openwave's objections to the document request are without merit and should be overruled, and Openwave should be ordered to produce the requested documents at the earliest possible date.

**H.   Request for Production No. 8:** "All Documents relating to any data traffic reduction analysis for any of your Compression Server products or services that you have performed, participated in, or received, including any data traffic reduction study, model, testing or trial."

1. Openwave objects that the phrase "data traffic reduction analysis" is vague and ambiguous. It is not vague or ambiguous. It is clear and concise, and constitutes a well-known concept used in the communications industry related to data streaming. Openwave is a company that develops and sells data compression products to telecommunication companies, such as Sprint. The primary purpose of the Openwave data compression products is to reduce the amount of data traffic in the telecommunication network.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

2.   Openwave next objects that the request is overly broad and unduly burdensome and that it is not reasonably calculated to lead to the discovery of admissible evidence. The request is neither overly broad nor unduly burdensome. The requested documents will contain information about the effectiveness and operational capabilities of the Openwave data compression products used in the accused Sprint data network.  This information is directly relevant to the underlying patent infringement and damages suffered by Realtime as a result of Sprint's use of the Openwave data compression products. At a minimum, this information is reasonably calculated to lead to the discovery of such admissible evidence. Openwave's objections are without merit and should be overruled, and Openwave should be ordered to produce the requested documents at the earliest possible date.

**I.**      **Request for Production No. 9:** "All Documents relating to any cost of ownership savings analysis for any of your Compression Server products or services that you have performed, participated in, or received, including any data traffic reduction study, modeling, testing or trial."

Openwave objects that the phrase "cost of ownership savings analysis" is vague and ambiguous. It is not vague or ambiguous. It is clear and concise and constitutes a well-known and easily understood term. A "cost of ownership savings analysis" is similar to a "return on investment analysis" or "ROI." For the same reasons as set forth above for "ROI" documents, Openwave's objections to this request are also without merit.  Indeed, Openwave advertises its own "ROI" analysis tool on its website for potential customers to use to calculate its projected costs savings and its "return on investment" of the capital cost to purchase the data compression products.  These "cost of ownership saving analysis" and related documents contain relevant and material information showing Sprint's projected cost savings, cost expenditures, network data traffic reduction, and "return on investment" that Sprint has achieved or expects to achieve from utilizing the Openwave data compression products.  These documents are relevant to Realtime's damages claims for Sprint's infringement of Realtime's patents. Openwave's objections should be overruled, and Openwave should be ordered to produce the requested documents at the earliest possible date.

17

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

**V.     Openwave's Objections to the Deposition Subpoena Should be Overruled**

Openwave's objections to the Deposition Subpoena are virtually identical to its objections to Realtime's document production subpoena.  For all of the reasons set forth above regarding that Document Subpoena, Openwave's objections to the deposition subpoena should be overruled.  Any different objections raised by Openwave to the Deposition Subpoena are addressed below.

**A.     Openwave's Objections to Realtime's "Definitions" Should be Overruled**

**Objection to "Operational Outputs":** Openwave objects to the definition of "Operational Outputs" as "unintelligible" to the extent the descriptive terms are undefined and ambiguous. Openwave further objects to the extent that the definition includes "any documents" based upon "Operational Outputs" and to the extent that the definition relies on the terms "Compression Server" and "Communication" to which Openwave earlier objected. The objections are without merit. The definition of "Operational Outputs" is set out in clear and concise language:

> "any files, DOCUMENTS, and/or COMMUNICATIONS that are generated by the operation of any COMPRESSION SERVER, including logs, profiles, key performance indicators (KPIs), throughput reports, cache statistics, ITF-N XML flat files that capture raw counters related to optimization, as well as any DOCUMENTS based on such files, DOCUMENTS, and/or COMMUNICATIONS."

The definition specifies different types and examples of "Operational Output" files, including "log files" and transaction reports that are created by the Openwave data compression products that record information about each data compression operation performed by the Openwave compression products, along with other key performance information (or "KPI") regarding the overall performance and effectiveness of the compression products.  The inclusion of "Documents based on such files" in the definition refers to any summary reports or transaction aggregation reports of these data compression transaction log files.  Openwave fails to identify any specific terms in this definition that render it unclear or ambiguous. Nor does Openwave

18

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

1   assert that its personnel would not understand what is meant by this definition. Openwave's

2   objection should be overruled.

3        **Objection to "Configuration Files":** Openwave objects to the term "Configuration

4   Files" as overly broad and unduly burdensome and to the extent that the definition relies on the

5   term "Compression Server." The objections are without merit. The term "Compression Server" is

6   clearly and adequately defined:

7           "any DOCUMENTS used by or intended for use with a COMPRESSION SERVER to

8           control or configure the operation of that COMPRESSION SERVER."

9   As set out in the definition, "configuration files" are the files and information used to control and

10  configure the operation of the Openwave data compression products. Those data compression

11  products perform complex operations to compress different types of data transmitted through a

12  wireless data network (such as the accused Sprint wireless data network) to an end user (such as

13  a Sprint cell phone subscriber). These data compression systems require system initialization

14  and operation parameters from the network provider (like Sprint) in order to perform the data

15  compression functions required by the specific network provider. The definition of

16  "Configuration Files" is clear, direct and concise, and it is easily understood. Openwave's

17  objections should be overruled.

18       **B.**    **Openwave's Objections to the Deposition Topics Should be Overruled**

19         **1. Deposition Topic No. 1:**   "The design, installation, testing, operation,

20             administration, use, features, and functionality of each Compression Server

21             provided to or used by any Defendant, including which features and functionality

22             are used by each Defendant and all Communications with any Defendant."

23       This deposition topic is straightforward. It seeks information regarding the various

24  Openwave data compression products utilized by Sprint (or any other Defendant) in the accused

25  data networks during the past several years (from 2004 to the present). Openwave is a key

26  source for this information, which is material and relevant to Realtime's infringement claims in

27  the Lawsuit. Openwave objects that Realtime has received or can obtain the requested

28  information from Sprint or other Defendants in the Lawsuit. There is no guarantee or assurance,

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave
Systems, Inc.

however, that Realtime will be able to obtain all of this information from Sprint (or other Defendants) in the Lawsuit. Indeed, contrary to Openwave's inference, it is unlikely that Sprint has full knowledge of all of the various Openwave data compression systems (including different product types and versions of those products) that have been deployed and used by Sprint over the past several years. An example of this is employee turnover at Sprint, faded memories, and lost documents. Realtime is entitled to obtain this information from Openwave, who is in a better position to know the features and functionality of each data compression product, as well as the differences between the operations of those products. This is key in this case because the manner in which certain types of data compression operations are performed is relevant to Realtime's asserted patent claims.

Openwave does not assert that the requested information is not relevant or material to the issues in the Lawsuit. Indeed, it is clear that the requested information is of great relevance and materiality to those issues. Openwave's objections to the requested topic should be overruled, and Openwave should be ordered to testify about that information at its deposition.

2. **Deposition Topic No. 2:** "Any contracts or agreements for each Compression Server provided to or used by and Defendant, including all facts and circumstances related to indemnification demands or requests made to You by and Defendant relating to the Lawsuit and/or any Compression Server."

Openwave objects that the topic is overly broad and unduly burdensome. The topic is neither. Openwave has only set forth its conclusions about the requested information. It has failed to state even one fact or reason to support its conclusion. Openwave next objects that the topic seeks privileged information. This is no reason to preclude a deposition. Realtime is entitled to obtain information about Openwave's contracts with any Defendant and any indemnification demands relating to the Lawsuit. To the extent a question seeks privileged information, Openwave can raise a privilege objection during the deposition. Openwave's objections should be overruled.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

      **3.   Deposition Topic No. 3:** "The Source Code for each Compression Server provided to or used by any Defendant, including which Source Code was provided to and/or used by which Defendant."

Openwave objects that Realtime has received or can obtain the requested information from the Defendants in the Lawsuit. To the contrary, neither Sprint nor any other Defendant has the source code for the Openwave data compression products. The information sought is Openwave's information. Openwave is the only party who can know all of the information related to its products. If Sprint (or any other Defendant) did obtain some of the requested information from Openwave and did produce such information, Realtime cannot know if all relevant information to Openwave's products and services was provided to or produced by Sprint. The only source for the requested information is Openwave.  Openwave's objections should be overruled.

      **4.   Deposition Topic No. 4:** "All facts and circumstances, including dates of use, related to all Operational Outputs and Configuration Files of any Compression Server provided to or used by any Defendant."

Openwave objects that the terms "operational outputs" and "configuration files" are vague, ambiguous and unintelligible. To the contrary, as explained above, the definitions for those terms are clear and easily understood.  Openwave next objects that Realtime has received or can obtain the requested information from the Defendants in the Lawsuit. This deposition topic seeks testimony on the logs, reports, and other "operational outputs" generated by the Openwave data compression product used Sprint. It also seeks testimony on the "configuration files" Openwave provided to Sprint for its data compression products. Openwave is the only party who can know all of this information related to its products. If Sprint (or any other Defendant) did produce such information, Realtime cannot know if all of the relevant information to Openwave's products was either provided to Sprint or otherwise produced by Sprint. The only source for all of the requested information is Openwave.

Openwave does not assert that the requested information is not relevant or material to the issues in the Lawsuit. Indeed, the requested information is highly relevant to the detailed

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

1  operation and functionality of the data compression systems used by Sprint in its accused
2  network. Openwave's objections should be overruled.

3      **5.  Deposition Topic No. 5**: "The current historical sales (from 2004 to the present)
4          to any Defendant of any Compression Server."

5      Openwave objects to the request as vague and ambiguous. It is neither. It is a simple,
6  straightforward topic for deposition – the sales of Openwave's data compression products to any
7  Defendant in the Lawsuit. Openwave does not assert that the requested information is not
8  relevant or material to the issues in the Lawsuit. Indeed, this topic is relevant to the issue of
9  infringement (such as when certain data compression products were purchased and deployed by
10  Sprint in its network) and damages (such as the amounts Sprint paid for the data compression
11  technology utilized in its network). Openwave's objections should be overruled.

12      **6. Deposition Topic No. 6**: "The value, pricing, benefits, advantages, and/or
13          disadvantages of each Compression Server provided to or used by any
14          Defendant, including all facts and circumstances related to any return-on-
15          investment (ROI), data traffic reduction, cost of ownership, and/or savings
16          analysis, study, or testing."

17      Openwave objects that the topic is overly broad and unduly burdensome. As explained
18  above in connection with Openwave's objections to document production Request Nos. 6-9, *see*
19  Sections IV.F-I, *supra.*, this topic seeks testimony regarding any return-on-investment (ROI),
20  data traffic reduction, cost of ownership or cost savings analyses that Openwave performed or
21  was involved in with regard to any Openwave data compression products utilized by Sprint (or
22  any other Defendant).  The topic is neither overly broad nor unduly burdensome. Openwave has
23  only set forth its conclusions about the requested information. It has failed to state even one fact
24  or reason to support its conclusions. The topic is directly related to the patent infringement
25  claims in the Lawsuit, including infringement of the patent claims and damages suffered by
26  Realtime based upon Sprint's use of the Openwave data compression technology in the accused
27  data network. At a minimum, the information could lead to the discovery of admissible evidence
28  on these issues.  Openwave's objections should be overruled.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave
Systems, Inc.

7. **Deposition Topic No. 7:** "All Communications between You and any person, including but not limited to any Defendant, relating to Realtime Data LLC, the Realtime Patents, and/or the Lawsuit."

Openwave objects that the topic is overly broad and unduly burdensome and not reasonably calculated to lead to admissible evidence. The topic is neither overly broad nor unduly burdensome. Openwave has only set forth its conclusions about the requested information. It has failed to state even one fact or reason to support its conclusions. The topic is directly related to the issues in the Lawsuit. It goes to communications between Openwave and any person relating to Realtime, Realtime's patents, or the Lawsuit. Such communications could contain information about (i) knowledge of Realtime and its patents prior to the development or sale of any data compression products to Sprint or other Defendants, (ii) discussions about potential infringement of the Realtime patents, and (iii) discussions about the lack of non-infringing alternatives to Realtime's inventions. This information is relevant to the issues of patent validity, willful infringement, and damages in the Lawsuit. At a minimum, the information could lead to the discovery of admissible evidence on these issues.

In view of the foregoing, Openwave's objections to the deposition topics should be overruled and Openwave should be ordered to produce a witness to testify on the topics.

## VI.    Conclusion

For the foregoing reasons, Realtime respectfully requests that the Court grant this Motion to Compel Openwave to produce the documents and testimony required under the subpoenas. The documents and testimony requested by Realtime from Openwave are relevant and necessary to the issues in the Lawsuit. Realtime has a fact discovery cutoff date of June 15, 2012 in the Lawsuit. Time is of the essence. Openwave's objections should be overruled and Openwave should be ordered to produce the requested documents and testimony at the earliest possible date and prior to June 15, 2012. Pursuant to Fed. R. Civ. P. 37(a)(5), Realtime requests that the Court order Openwave to reimburse Realtime for its attorneys' fees and costs incurred in connection with this Motion, and any other relief that the Court and equity may require.

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave Systems, Inc.

Dated:  April 20, 2012

Respectfully submitted,

David C. Bohrer
SB# 212397
CONFLUENCE LAW PARTNERS
60 South Market Street, Suite 1400
San Jose, CA 95113-2396
Tel.: 408.938.3882
Fax: 408.971.4332
dbohrer@ConfluenceLaw.com

J. Pat Heptig  (*pro hac admission pending*)
HEPTIG LAW GROUP, LTD.
1700 Pacific Ave., Suite 2650
Dallas, TX 75201
Tel.: (214) 451-2154
pheptig@heptiglaw.com

Attorneys for REALTIME DATA, LLC

24

Realtime Data, LLC's Motion to Compel Document Production and Testimony from Openwave
Systems, Inc.

## **PROOF OF SERVICE**

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action. My business address is at 60 South Market Street, Ste. 1400, San Jose, CA 95113.

On April 20, 2012, I served the foregoing document described as REALTIME DATA LLC'S MOTION TO COMPEL DOCUMENT PRODUCTION AND TESTIMONY FROM OPENWAVE SYSTEMS, INC. on each interested party, as follows:

> **Brett Schuman**
> **Morgan Lewis & Bockius, LLP**
> **One Market, Spear Street Tower**
> **San Francisco, CA 94105-1126**
>
> **bschuman@morganlewis.com**

[X]   (BY U.S. MAIL) I caused the foregoing document to be served by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the U.S. Mail in San Jose, California, and addressed to the parties listed above.

[X]   (BY ELECTRONIC MAIL) I caused the foregoing document to be served electronically by electronically mailing a true and correct copy through Confluence Law Partners electronic mail system to the e-mail address(es), as set forth above, and the transmission was reported as complete and no error was reported.

Executed on April 20, 2012, at San Jose, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| Janet Ho | *Janet Ho* |
|---|---|
| (Type or print name) | (Signature) |